Eva R. Gardner
Benjamin J. Farkash
ASHBURN & MASON, P.C.
1227 West Ninth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
E-mail: eva@anchorlaw.com, ben@anchorlaw.com
*Attorneys for Plaintiff Marilyn Stewart*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | |
|---|---|
| MARILYN STEWART,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA STATE COMMISSION FOR HUMAN RIGHTS,<br><br>Defendant. | Case No. 3:22-cv________<br><br>**COMPLAINT** |

Plaintiff Marilyn Stewart, by and through counsel, alleges the following:

## NATURE OF THE CASE

1. The Alaska State Commission for Human Rights is charged with protecting Alaskans from the evils of unlawful discrimination. Yet on July 24, 2019, in violation of some of the very laws it exists to enforce, it terminated its Executive Director Marilyn Stewart because of her race, sex, and military status. This suit seeks to hold the Commission accountable and vindicate Ms. Stewart's rights.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. This court has personal jurisdiction over the Commission because the Commission is an agency of the State of Alaska and exists pursuant to Alaska state law.

4. Pursuant to 28 U.S.C. § 1391(b)(1)–(2), venue is proper in this court because all of the events or omissions giving rise to Ms. Stewart's claims occurred in this district.

## PARTIES

5. Plaintiff Marilyn Stewart is an individual residing in Anchorage, Alaska.

6. Defendant Alaska State Commission for Human Rights ("Commission" or "ASCHR") is an office of the governor of the State of Alaska that exists pursuant to AS 18.80.010. Its statutory purpose is to enforce Alaska's human rights laws and its mission, as stated on its website, is "[t]o eliminate and prevent discrimination for all Alaskans."

## FACTS GIVING RISE TO CLAIMS

7. In May 2019, Ms. Stewart applied to be the Executive Director of the Alaska State Commission for Human Rights ("ASCHR"). At the time, Ms. Stewart was working in the Office of the Governor. She had a strong track record of public service that included military service and working on issues of equity, equality, and non-

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

discrimination. For example, Ms. Stewart previously served as the Executive Director of the Municipality of Anchorage Office of Equal Opportunity.

8. At the time of Ms. Stewart's application, there were seven Commissioners: Chair Debbie Fullenwider; Vice Chair Marcus Sanders; David Barton; William Craig; Betsy Engle; Cynthia Erickson; and Evelyn Falzerano. Chair Fullenwider and Commissioner Erickson were relatively new appointees who had been on the Commission for under three months.

9. Ms. Stewart interviewed for the position on June 28, 2019. All seven Commissioners were present at the interview. The Commission subsequently voted to hire Ms. Stewart on June 17, 2019, with six Commissioners voting in favor and Commissioner Engle voting against. On information and belief, Ms. Engle did not want to hire Ms. Stewart because of her military background.

10. Ms. Stewart began work as Executive Director on July 1, 2019. Her job duties included handling the day-to-day management of the office, hiring and promoting employees of the Commission, overseeing investigations, and managing the budget, among others.

11. Shortly after she began work, Ms. Stewart received information indicating that she had been hired at a lower rate of pay than her predecessor. Ms. Stewart is an African American woman and her predecessor was, on information and belief, a white woman. Only one of the Commissioners at the time of Ms. Stewart's hire, Marcus Sanders, was African American. Ms. Stewart was concerned about this pay discrepancy,

ASHBURN & MASON P.C.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235

particularly in light of ASCHR's mission to prevent discriminatory treatment. She was familiar with the State of Alaska's payroll practices from her prior position and accordingly reached out to the State's Division of Administrative Services on July 3, 2019 to inquire about the discrepancy.

12. On July 17, 2019, after 16 days as the Executive Director of ASCHR, Ms. Stewart attended a meeting called by Chair Fullenwider to address the signature stamp of the commissioners and Ms. Stewart's salary. Chair Fullenwider, Commissioner Barton, and Vice Chair Sanders were present at the meeting, along with two members of the ASCHR staff that Ms. Stewart had invited. The July 17 meeting was only the second time Ms. Stewart had met Chair Fullenwider or Commissioner Barton, and the first time she had seen them since her interview for the Executive Director position.

13. The meeting began with introductions and then Ms. Stewart began to discuss the signature stamp issue, which she understood to be the primary purpose of the meeting, and stated that she had invited the two staff members present to support that discussion. Instead of discussing the signature stamp issue, Chair Fullenwider stated, "I don't think you're going to want [the ASCHR staff members] to be here and listen to what I have to say." Chair Fullenwider then looked at Ms. Stewart and stated, "You're incompetent, I can't work with you," and said that she planned to inform Governor Dunleavy of her opinion.

14. Next, Chair Fullenwider stated that there had been a vote of "no confidence" in Ms. Stewart by the Board of Commissioners. Vice Chair Sanders

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

immediately cast doubt on this representation by asking, with apparent surprise, "Where did this come from?" Commissioner Barton also appeared surprised and asked, "When did this vote take place?" Ms. Stewart also asked when the Commission's vote had occurred. Chair Fullenwider responded, "Shut up, I'm not here to have a pissing contest with you."

15. At that point, Ms. Stewart asked the staff members to leave the meeting. Chair Fullenwider continued berating Ms. Stewart for alleged incompetence and then said, "Alaska Natives do a better job of managing these types of boards, they work well with their directors." On information and belief, Chair Fullenwider is Alaska Native. Chair Fullenwider continued to state that she could not work with Ms. Stewart because of Ms. Stewart's incompetence and repeated her comment about Alaska Natives working well with boards. She also stated that Ms. Stewart was "not qualified for this position" and demanded that Ms. Stewart provide a copy of her resume. Chair Fullenwider further stated that she had reached out to former Municipality of Anchorage Mayor Dan Sullivan, one of Ms. Stewart's references during her application process. Commissioner Barton expressed shock upon hearing this and asked why she had done that, but Chair Fullenwider did not respond.

16. As of the date of the July 17 meeting, Chair Fullenwider had not worked with Ms. Stewart at all and thus had no basis for any opinions regarding her competence.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

17. On information and belief, contrary to Chair Fullenwider's representations, the Commission had not held a properly-noticed public meeting since June 17, 2019, when it voted to hire Ms. Stewart.

18. After Chair Fullenwider finished speaking, Ms. Stewart informed her that the Commission already had Ms. Stewart's resume from her recent job application for the Executive Director position, and then stated "You will not talk to me like that, you are the Chair of the Commission, and I can't believe you're talking to anyone like that."

19. Chair Fullenwider also expressed that she was upset that Ms. Stewart "went around" the Commission to negotiate her salary and benefits package. Ms. Stewart explained that she had not been negotiating, she had merely been inquiring, and that although a salary range had been informally communicated to her at the time of her hire, she had yet to receive a formal document explaining what her salary and benefits would be. Ms. Stewart also shared a copy of an e-mail she had received from the State of Alaska's Director of Administrative Services, Shawn Henderson, stating there were funds available in the budget for a pay increase for Ms. Stewart's position. Mr. Henderson had sent this e-mail to Chair Fullenwider prior to the meeting. A true and correct copy of this e-mail is attached as **Exhibit 1**. Chair Fullenwider acknowledged that she had received the e-mail, and stated she had not shared it with her fellow Commissioners because she did not "trust" them.

20. Chair Fullenwider stated that it would be necessary to call a meeting of the full Commission to discuss the salary issue. Ms. Stewart said that it was not an issue; she

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

was willing to let the matter go in the interest of allowing ASCHR to move forward smoothly after some negative publicity it had received from a recent scandal involving Ms. Stewart's predecessor, and that she was fine with the salary that had been informally communicated to her. Chair Fullenwider continued to insist that a meeting of the full Commission was necessary to address Ms. Stewart's salary. Commissioner Barton asked why a meeting would be necessary since Ms. Stewart had just stated that she was not asking for anything regarding her salary and was willing to move on. Chair Fullenwider insisted and a meeting regarding Ms. Stewart's salary was scheduled for July 24, 2019.

21. After the July 17 meeting, Vice Chair Sanders sought Ms. Stewart out. He told Ms. Stewart that after she left, Chair Fullenwider expressed that she was looking forward to "micromanaging" Ms. Stewart. He also told Ms. Stewart that he and Commissioner Barton had told Chair Fullenwider that she was out of line and that her behavior was unprofessional. In addition, on July 23, 2019, Commissioner Sanders sent a letter to Chair Fullenwider and the other Commissioners sharing concerns about Chair Fullenwider's "disrespectful and highly unprofessional" conduct at the July 17 meeting and reminding her that Ms. Stewart was within her rights to raise concerns about her pay. A true and correct copy of this letter is attached as **Exhibit 2**.

22. Ms. Stewart was both upset and concerned by Chair Fullenwider's statements and conduct. It was crucial to the work of ASCHR for Ms. Stewart and Chair Fullenwider to have a functional working relationship. Accordingly, on July 18, 2019, she sent a letter to Tuckerman Babcock, Governor Dunleavy's Chief of Staff, detailing

ASHBURN & MASON P.C.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235

the abuse and racially discriminatory insults she had suffered at the July 17 meeting, and requesting assistance navigating the situation. The next day, Ms. Stewart received a call from the Governor's Deputy Chief of Staff Jeremy Price. Mr. Price informed Ms. Stewart that there had been an executive meeting regarding the memo Ms. Stewart sent to Mr. Babcock. Mr. Price told Ms. Stewart that the directive from the Governor's office was to attempt to work with Chair Fullenwider and get along. Ms. Stewart expressed concern that this would be difficult in light of Chair Fullenwider's abusive treatment of her at the July 17 meeting and repeated statements that she could not work with Ms. Stewart. Despite that, Ms. Stewart resolved to make good-faith efforts to move on and work with Chair Fullenwider.

23. The July 24, 2019 Commission meeting to discuss Ms. Stewart's salary remained scheduled, even though Ms. Stewart had communicated that she was not interested in pursuing a pay increase. Ms. Stewart arrived at the meeting and was handed a document asking her to waive her right to have the Commission's discussions about her be conducted in executive session." Because she had not had an opportunity to review the document, she immediately left the meeting and contacted Assistant Attorney General Kevin Higgins to ask about it. Mr. Higgins expressed surprised that the document had not been provided to Ms. Stewart in advance of the meeting, as he had told Chair Fullenwider that it was important to provide the document to Ms. Stewart the day before the meeting so that she would have time to review and consider it.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

24. Ms. Stewart returned to the meeting. The meeting had begun at the Commission office, then relocated to the Governor's office, and then resumed at the Commission office. The majority of the meeting took place in executive session.

25. Ms. Stewart was unable to stay for the whole meeting because of prior commitments but returned near the end and learned she had been terminated. On information and belief, Commissioner Engle (who had previously discriminated against Ms. Stewart for her military background) had made a motion to terminate Ms. Stewart, which passed in a 4-3 vote. Chair Fullenwider, Commissioner Engle, Commissioner Erickson, and Commissioner Falzerano voted in favor, and the Vice Chair Sanders, Commission Barton, and Commissioner Craig voted against.

26. When Ms. Stewart returned to the meeting and learned of the vote, she asked the Commissioners why she had been terminated. She was provided no answer.

27. On information and belief, while meeting at the Governor's office, the Commission decided not to terminate Ms. Stewart, with Commissioner Erickson as the swing vote. Commissioner Erickson then rode back to the Commission office with Chair Fullenwider, Commissioner Engle, and Commissioner Falzerano. By the time the meeting resumed at the Commission office, Commissioner Erickson had changed her mind, based on private discussions conducted outside the noticed meeting without all Commissioners present.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

28. On information and belief, upon seeing the vote breakdown (split along gender lines), Chair Fullenwider stated "Maybe Marilyn would work better with a man anyway."

29. On information and belief, Chair Fullenwider preferred to work with men and/or preferred to work with Native individuals, and influenced other members of the Commission to terminate Ms. Stewart because of those unlawful preferences.

30. On information and belief, Chair Fullenwider was upset at Ms. Stewart for investigating the potentially race-based pay discrepancy between Ms. Stewart and her predecessor and influenced other members of the Commission to terminate Ms. Stewart because of her unlawful retaliatory intent.

31. On information and belief, Commissioner Engle voted to terminate Ms. Stewart because she disliked that Ms. Stewart had a military background and influenced other members of the Commission to terminate Ms. Stewart because of that unlawful dislike.

32. Ms. Stewart subsequently confirmed that Chair Fullenwider had indeed contacted former Mayor Sullivan about her and twice asked him to rescind his endorsement of Ms. Stewart, and that he had refused.

33. On November 7, 2019, the Commission hired Robert William Corbisier for the Executive Director position at a significantly higher salary than Ms. Stewart. On information and belief, Mr. Corbisier identifies as a Native American male, and the

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

Commission encouraged Mr. Corbisier to negotiate his salary at the time of his hire. Mr. Corbisier still holds the Executive Director position as of the date of this Complaint.

34. Ms. Stewart filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on January 2, 2020. The EEOC conducted an investigation. As part of its investigation, the EEOC interviewed and obtained statements from individuals with knowledge of the events at issue.

35. Commissioner Sanders provided a statement to the EEOC on March 30, 2021 with his description of the events leading to Ms. Stewart's termination. He stated:

> I believe then, as I firmly believe now, that Ms. Stewart was wrongfully terminated and discriminated against because she made a straightforward inquiry about her salary. And because she was the first African American woman to hold the Executive Director of the Alaska State [Commission for] Human Rights position in the 55-year history of the Commission. I was privileged to comments made by Commissioner Fullenwider regarding Ms. Stewart's pay and *working relationships with men.* I found *working relationships with men's* statements inappropriate with a sexual connotation, especially from a Human Rights Commission representative.
>
> At the July 18 [sic], meeting Commissioner Fullenwider stated, "*She could not work with Ms. Stewart." And reference the success of how native corporations manage their board members. . . . She further told Ms. Stewart that she was incompetent, and if Ms. Stewart worked for a Native corporation, they would have fired her. . . ."*
>
> The sole purpose of the July 18 [sic] and 24 meetings was to discuss Ms. Stewart's salary. In these two separate meetings regarding Ms. Stewart's salary, there were no mention[s] or discussions about Ms. Stewart being challenging to work with or having clashes or conflicts with board members.

Mr. Sanders further confirmed that "Ms. Stewart's salary was less than the last and current executive directors." A true and correct copy of his statement is attached as **Exhibit 3**.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

36. Ms. Stewart was hired at a base salary of $102,979. On information and belief, Mr. Corbisier was hired at a base salary of $149,019.

37. In its response to Ms. Stewart's charge, the Commission asserted that Ms. Stewart had been lawfully terminated because of problems with her management style.

38. However, in a statement provided to the EEOC on January 3, 2020, Commissioner Sanders cast doubt on this allegation:

> Commissioner Fullenwider never ever mentioned to me as the Vice-Chair that she had problems with Ms. Stewart's management of the agency. Furthermore, she never informed me of her plans to terminate Ms. Stewart at the July 24th special executive board meeting. Commissioners Craig, Barton, and I were taken by surprise when Commissioner Betsy Engle made the motion to terminate Ms. Stewart without reasons other than the discussion of Ms. Stewart's salary. Commissioner Engle did not vote for Ms. Stewart to become Executive Director. . . because of Ms. Stewart's military background. I believe that both Commissioners Erickson and Falzerano were asked by Commissioners Fullenwider and Engle to vote against Ms. Stewart at the July 24, 2019 special board meeting.

A true and correct copy of this statement is attached as **Exhibit 4**.

39. Mr. Corbisier, Ms. Stewart's successor, was one of the individuals interviewed by the EEOC. Although he was not involved in Ms. Stewart's termination, the affidavit he provided to the EEOC confirms that Chair Fullenwider had a continuing practice of making racist comments. A true and correct copy of this affidavit is attached as **Exhibit 5**. At pages 13-14, Mr. Corbisier testified:

> Fullenwider made racist comments about others, including in reference to Ms. Stewart. One comment struck me in particular because I was aware of Stewart's complaint when Fullenwider made the statement. . . . Fullenwider stated that "if [Ms. Stewart] worked for a native corporation, she would have been terminate" or words similar to that. (Fullenwider stated that to me more

ASHBURN & MASON P.C.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235

> than once during our one-on-one meetings together.) Fullenwider then went on to say words to the effect of, "I think it is better to have Native people in these positions. Even though those people came here against their will, we were here first." In that statement, Fullenwider may have referenced Africa or slavery or transport to North America unwillingly, but I do not recall specifically; either way, I was appalled by the racial tones of her statement. Fullenwider's message was clear that she believed Native people should hold positions of authority rather than black people. I do not recall her using the term 'black people,' but in the context in which she made her statement, she was undeniably referring to black people.

40. The EEOC investigation uncovered other discriminatory and improper conduct by Chair Fullenwider. For example, documents produced by ASCHR during the investigation revealed that an administrative employee had complained extensively regarding Chair Fullenwider's conduct. According to the employee, Chair Fullenwider regularly harassed her regarding her job performance and made discriminatory comments about the employee's age. The employee also reported that Chair Fullenwider made frequent references about calling other Commissioners privately to discuss ASCHR business, which violated the Open Meetings Act.

41. In or around July 2021, while the EEOC investigation was ongoing, Chair Fullenwider, Commissioner Engle, and Commissioner Erickson abruptly resigned from the Commission.

42. On March 16, 2022, the EEOC rejected ASCHR's purported reasons for termination Ms. Stewart and found in Ms. Stewart's favor. It concluded that there was "reasonable cause to believe" that Ms. Stewart "was denied equal wages or the opportunity to negotiate for higher wages because of her sex/female and her race/Black

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

in violation of Title VII." It further found that there was "reasonable cause to believe" that Ms. Stewart was discharged due [to] race, Black, sex female and for complaining about the wage discrimination, in violation of Title VII." A true and correct copy of this letter is attached as **Exhibit 6.** On August 3, 2022, Ms. Stewart received a right-to-sue letter from the Department of Justice. A true and correct copy of this letter is attached as **Exhibit 7**.

43. Since her termination, Ms. Stewart has been unable to find suitable replacement work despite diligent effort. Because of the high-profile nature of the ASCHR position, her termination received substantial media coverage, and the news articles about her termination come up immediately when Ms. Stewart's name is searched on the internet. As of the date of filing this Complaint, Ms. Stewart has applied to 106 jobs and participated in four interviews. In nearly every interview, she was asked about her short employment with ASCHR. Her understanding, after years of unsuccessfully seeking work, is that employers do not want to hire her because of her termination by ASCHR.

44. As a result of her unlawful termination, Ms. Stewart has suffered significant financial damage and reputational harm.

**COUNT I**

**Violation of Title VII of the Civil Rights Act of 1964**

45. All foregoing allegations are incorporated into this count.

ASHBURN & MASON P.C.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235

46. 42 U.S.C. 2000e-2 prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color religion, sex, or national origin.

47. 42 U.S.C. 2000e-3 prohibits an employer from retaliating against an employee for opposing any practice made unlawful by Title VII of the Civil Rights Act of 1964.

48. As alleged above, ASCHR discriminated against Ms. Stewart in her compensation and discharged her because of her race and sex and in retaliation for inquiring about an apparently discriminatory pay discrepancy.

49. This conduct violated Title VII.

**COUNT II**

**Violation of the Alaska Human Rights Act**

50. All foregoing allegations are incorporated into this count.

51. AS 18.80.220 renders it unlawful for an employer to refuse employment to a person, or discriminate against a person in compensation or in a term, condition, or privilege of employment, because of the person's race, religion, color, or national origin, or because of the person's age, physical or mental disability, sex, marital status, changes in marital status, pregnancy, or parenthood; or because the person has opposed any practices prohibited by the Alaska Human Rights Act.

ASHBURN & MASON P.C.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235

52. As alleged above, ASCHR discriminated against Ms. Stewart in her compensation and discharged her because of her race and sex and in retaliation for inquiring about an apparently discriminatory pay discrepancy.

53. This conduct violated the Alaska Human Rights Act.

**COUNT III**

**Violation of the Uniformed Services Employment and Reemployment Rights Act**

54. All foregoing allegations are incorporated into this count.

55. The Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. 4301 ("USERRA"), prohibits workplace discrimination against persons because of their service in the U.S. military.

56. Commissioner Engle voted not to hire Ms. Stewart as Executive Director because of Ms. Stewart's military background. She later voted to terminate her employment, in whole or in part for the same reason.

57. This violated USERRA.

**COUNT IV**

**Breach of the Covenant of Good Faith and Fair Dealing**

58. All foregoing allegations are incorporated into this count.

59. In every contract in Alaska, there is an implied promise of good faith and fair dealing. This means that each party promises not to do anything to destroy or injure the right of the other party to receive the benefits of the contract.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

60. ASCHR had an employment contract with Ms. Stewart.

61. By terminating Ms. Stewart for unlawful and discriminatory reasons, ASCHR deprived Ms. Stewart of the benefit of her employment contract intentionally and/or by acting in a manner that was objectively unfair.

62. In addition or in the alternative, ASCHR, as a governmental commission, was obligated to conduct its business openly under the Alaska Open Meetings Act, AS 44.62.310–20. Under the Open Meetings Act, any discussions by a majority of Commissioners on matters on which they are entitled to act must be noticed and conducted in public unless the discussion qualifies for an executive session.

63. ASCHR violated the Open Meetings Act by meeting outside its publicly-noticed schedule regarding Ms. Stewart. Upon information and belief, a majority of Commissioners met on multiple occasions in 2019 to discuss Ms. Stewart's employment and termination, which are matters of public concern on which the Commission is empowered to act, without properly noticing or opening those meetings to the public, or even informing certain Commissioners that they were taking place. These meetings included a secret meeting between July 1, 2019 and July 17, 2019, wherein Chair Fullenwider and other Commissioners held a purported vote of no-confidence in Ms. Stewart; as well as one or more other secret meetings from July 17, 2019 through July 24, 2019, wherein Chair Fullenwider and other Commissioners decided to terminate Ms. Stewart.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

64. ASCHR's termination of Ms. Stewart's employment contract during secret meetings that violated the Open Meetings Act was intentional, contrary to public policy, and objectively unfair.

65. These actions breached the covenant of good faith and fair dealing.

**DEMAND FOR JURY**

Plaintiff demands a trial by jury on all claims so triable.

**REQUEST FOR RELIEF**

Based on the foregoing, Plaintiff requests the following relief:

A. An award of compensatory damages, back pay, and front pay, in amounts to be demonstrated at trial;

B. An award of punitive damages;

C. An injunction reinstating Ms. Stewart as the Executive Director of ASCHR;

D. An award of costs and reasonable attorney's fees;

E. Leave to amend this Complaint as needed; and

F. For such other relief deemed just and equitable.

ASHBURN & MASON, P.C.
Attorneys for Plaintiff Marilyn Stewart

DATED: 2022-10-27

By: /s/ Eva R. Gardner
Eva R. Gardner
Alaska Bar No. 1305017
Benjamin J. Farkash
Alaska Bar No. 1911095

ASHBURN & MASON P.C.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235